Brinkerhoff, J.
At the May term, 1868, of the common pleas of Lucas county, the plaintiff in error was indicted for the crime of embezzlement, and at the October term following he was, on the plea of not guilty, tried, convicted, and sentenced; and to reverso the judgment and sentence in the case, and for the award of a now ti’ial, a writ of error is prosecuted in this coux-t.
The indictment was framed under the second section of the act of March 26, 1864, " for the prosecution and punishment of ccrtaiix crimes therein named” (Swan & Sayler’s Stat. 269), which is as follows:
“That if any clerk or servant of any private person, or of any copartnership (except apprentices and persons within the age of eighteen years), or if any officer, agent, clerk, or servant of any incorporated company or joint stock company shall embezzle or convex-t to his own use, or fraudulently take, make way with, or secrete, with intent to embezzle or fraudulently convert to his own use, without the assent of his master or employers, any money, goods, rights in action, or other valuable security or effects whatever, belonging to any other person, which shall come into his possession, or under Ms care, by virtue of such employment or office, he shall, upon conviction, be punished in the manxier px'escribed by law for feloniously stealing propex-ty of the value of the article so embezzled, *taken, or secreted, or of the value of any sum of [369 money payable and due upon any right in actioix so embezzled.”
On the trial, a bill of exceptions was taken, setting forth all the *370 evidence in the case, the charges of the court upon matters of law" requested by counsel for the prisoner to be given to the jury, and-refused by the court, and the charge of the court as given. After verdict, a motion for a new trial was duly made by the prisoner, on the alleged grounds of error by the court, in refusing to charge the jury as requested, in the charge as given, and that the verdict was not sustained by sufficient evidence. This motion was overruled- and exception duly taken.
The indictment contains five counts, but the questions made by counsel in argument, and which are the controlling questions in the case, arise under the first and second counts, the evidence given under them, and the charges of the court refused and given in relation thereto.
The first count charges, in substance, that Calkins was the cleric of the Michigan Southern and Northern Indiana Railroad Company; that said railroad company was a corporation, and that he fraudulently embezzled two thousand bushels of wheat, the property of said company, then under his care by virtue of his employment as-such clerk.
The second count is substantially the same as the first except that tho wheat alleged to have been embezzled was therein charged to-have been the property of Frederick Bissel and others.
On the trial, parol proof was offered, admitted, and given, to the effect that an association of persons existed, claiming to be a corporation, under the name of the Michigan Southern and Northern Indiana Railroad Company, suing and being sued, having a common seal, and operating a railroad as such, and exercising the franchise of a corporation. The plaintiff in error excepted to tho proof as incompetent and insufficient, and on the basis of these exceptions assigns error. We are of opinion, however’, that the proof was both competent and sufficient. In so holding we think we come fairly within the principles declared in Sasser v. The State, 13 Ohio, 453, and Reed v. The State, 15 Ohio, 217 ; and where a person accepts-370] ^employment from an association, claiming and assuming to have a corporate existence, as its clerk, and then, by means of the facilities which his employment and the confidence reposed in him affords, embezzles its property, it is difficult to perceive any principle of justice, public or private, which would be subserved by requiring of the state stricter proof of the corporate existence of the; *371 employer of the clerk, or of the owner of the property embezzled, than was given in this case.
2. It appears from the evidence that tho Michigan Southern and Northern Indiana Railroad Company had a grain elevator and warehouse at Toledo, which is the eastern terminus of its road, in which all grain arriving by way of its road and consigned to that point was stored; and in the conduct of the business of the company at this elevator, Calkins was employed as clerk. Each variety of grain thus received was stored by itself in bulk, and an account was kept of the amount and variety of each consignment of grain received and stored, and from whom. It was a part of the duty of Calkins, under his employment, to keep this account; and he was also authorized to, and as a general thing did, issue to the owners or consignees, for grain thus received and stored, a writing called a “ grain order,” subscribing thereto the name of D. C. Baldwin, who was the general freight agent of the company, which order was in the following form:
“A. No. 3,276. Grain Order. A.
“ Toledo Station, August 7, 1867.
“ Michigan Southern and Northern Indiana Railroad Go.:
“ Deliver to the order of Hamilton, grain transported by this railroad to Toledo, as per notice No. —, six hundred sixty-one bushels red wheat. D. C. Baldwin,
“ 661 Bush. Red. M. S. & N. I. R. R.
“Loss by fire and heating at owner’s risk.”
These orders were sold and transferred from hand to hand in the market, and accepted and received by the company, and by dealers in grain, as good evidence of title, in the holder, to the grain in the order specified. When the holder of *one of these orders [371 desired to ship his grain elsewhere, or to obtain it from the warehouse, it was tho duty and practice of Calkins, under his employment as clerk, on presentation of the grain order, to issue to the holder thereof an order, known as a “ shipping order,” upon the foreman of the elevator, signed by himself, in his own name, directing him to deliver to the party or vessel therein designated, the amount of grain mentioned therein, which, in the regular course of business, was done; and in this way only grain went out of the warehouse. The foreman of the elevator, on delivering the grain, signed his name upon the shipping order and returned it to Calkins, *372 who attached it to tho grain order he had taken up when he issued the shipping order, and filed both away in his office as vouchers, which were left in his custody. It was his duty also to make entries on book, an4 other memoranda, by which a regular account with the elevator, of grain received and delivered into and from it, should be kept. Such being tho duties and powers of Calkins under his employment, the evidence further shows, very satisfactorily, that while so employed ho clandestinely issued fictitious grain orders, caused them to be sold in market, and appropriated the proceeds of the sales to his own use ; and that he subsequently issued shipping- orders based upon the fictitious grain orders, which resulted in the delivery by the company of the amount of grain named in them to the holders. On this state of proof it was claimed in behalf of the prisoner that the wheat in the warehouse, and alleged to have boon embezzled, was not “ under his care,” and that no wheat was embezzled by him, because no wheat passed from the warehouse into his possession. The court below held otherwise, and this is assigned for error.
We are of opinion that the court below did not err in its holding on these points. There is no more reason why courts should allow themselves to be misled by mere names and shadows in the administration of justice in criminal, than in civil cases. Calkins, under and by virtue of his employment, had tho wheat in the warehouse of his employers so far under his care and in his possession and control as to give him the power to make an efficient transfer of title to any part of it to any person who should become the bona 372] fide purchaser of a *grain order issued by him in tho name of Baldwin — a transfer of title effective in favor of the holder of such order, and against his employers. This power he used to divest his employers of their property, and to put the proceeds of it into his own pocket. We think he had all the care of the property which tho statute contemplates, and that when he clandestinely transferred the title of wheat from the railroad company to an innocent holder of a grain order and appropriated the proceeds thereof to his own use, the act of embezzlement was complete.
3. The act of April 17,1867, “to authorize persons charged with crimes and offenses to testify,” provides “ that in the trial of all indictments, complaints, and other proceedings against persons charged with the commission of crimes or offenses, the person so charged shall, at his own request, but not otherwise, be deemed a *373 competent witness; nor shall the neglect or refusal to testify create any presumption against him, nor shall any reference be made to, nor any comment upon, such neglect or refusal.”
It appears from the record that on the trial of the case in the court below, after the close of the evidence, and while the counsel for the state was arguing the case to the jury, and arguing and commenting on what he claimed to have been established as matter of fact, the prisoner, occupying a seat near said counsel, interrupted him by speaking out and asserting the matter of fact to be otherwise. Whereujxm the counsel turned to him and said, in the hearing of the jury: “ Mr. Calkins, you had an opportunity to testify in this case, and did not do so.” This was presented to the court below as a ground of motion for the new trial which was overruled, and which overruling is here assigned for error.
We suppose a case might occur, in which the misconduct of counsel for the state in disregarding the prohibition of the statute above quoted, and of the court in permitting such disregard, or in failing promptly to rebuke and to arrest it by the exercise of all its authority and power necessary for that purpose, would require the court, in the exercise of a just discretion, and out of due regard to the rights of the prisoner, to award a new trial. But in this case the prisoner seems to *have provoked the single hasty retort [373 of counsel, and the court does not appear to have been in any way wanting in duty.
We see no error in the record and proceedings of the court below, and its judgment and sentence are affirmed.
Day, C. J., and Scott, Welch, and White, JJ., concurred.